IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SLATE BAR & LOUNGE, INC.,<br>      Plaintiff,<br><br>      v.<br><br>FOUNDERS INSURANCE<br>COMPANY,<br>      Defendant. | CIVIL NO.: 3:15-cv-2251<br><br>Magistrate Judge Saporito |

## MEMORANDUM

This is an insurance coverage declaratory judgment action in which the plaintiff, Slate Bar & Lounge, Inc. ("Slate Bar"), seeks a declaration that the defendant, Founders Insurance Company ("Founders"), has a duty to defend and indemnify Slate Bar under a liquor liability insurance policy for personal injuries sustained by a patron who was stabbed by a bouncer while the patron was attempting to enter the premises to purchase beer. Before us is Founders' motion to dismiss (Doc. 3). For the reasons set forth herein will deny the motion without prejudice.

I. Background

Bruce H. Fine commenced a civil action in the Court of Common Pleas of Luzerne County, Pennsylvania, on February 19, 2013, against Slate Bar for personal injuries sustained on its premises (the "underlying

action"). The complaint in the underlying action (Doc. 1-3, at 25-32) alleges that on December 12, 2012, Fine was a business invitee who was stabbed in the abdomen by Edwin Cortez, a Slate Bar bouncer/security guard, during a scuffle. The scuffle occurred when Fine and three of his friends were prevented from entering the bar unless they first paid a cover charge totaling $20.00. The group allegedly informed the bouncers they only wanted to purchase take-out beer. They were advised that Fine's two female friends would be permitted to enter the bar, with Fine and a male friend remaining outside. Fine and his make friend obliged, and a scuffle ensued, during which Fine was allegedly stabbed by Cortez. Cortez and another bouncer allegedly fled the scene after the stabbing.

Fine's cause of action for negligence against Slate Bar alleges, in part, that Slate Bar was negligent for: failing to properly train and supervise its employees; failing to intervene once Fine was confronted by Cortez; failing to keep the business premises safe for its business invitees; failing to warn patrons and business visitors that Slate Bar's employees are armed with weapons such as knives with three-inch blades; and negligently allowing Slate Bar's employees to carry knives. (Doc. 1-3, at

28-29).

The declaratory judgment complaint (Doc. 1-3, at 2-11), alleges that, after Slate Bar reported the claim to Founders' agent, Founders denied a defense and indemnification to Slate Bar. (Id. ¶¶ 17, 20, 21, 25, and 26).

Thereafter, on November 4, 2015, Slate Bar filed a coverage action against Founders in the Court of Common Pleas of Luzerne County, Pennsylvania. That action was removed to this court on November 24, 2015. (Doc. 1). In its complaint for declaratory judgment, Slate Bar alleged that Founders issued to it a Commercial Liquor Liability Policy of Insurance (the "Policy") which was in effect at the time of Fine's injuries. It was also alleged that the Policy contained an assault and/or battery coverage buy-back endorsement (the "A&B endorsement").

On November 25, 2015, Founders filed the instant motion to dismiss. (Doc. 3). In its motion, Founders avers that the Policy provided that it will pay those sums that an insured becomes legally obligated to pay as damages because of an injury where liability is imposed on an insured "by reason of the selling, serving, or furnishing of any alcoholic beverage." (Id. ¶15). Further, the Policy promised to defend an insured against suit

seeking those damages. (Id.) The crux of Founders' motion is that the underlying complaint does not allege that Cortez was intoxicated, that Slate Bar served or furnished alcohol to Fine, or that the furnishing or sale of alcohol gave rise to Slate Bar's liability. (Id. ¶23).

## II. Legal Standards

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests. Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief. Fed. R. Civ. P. 8(a). Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief is granted." See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light

most favorable to the plaintiff. See In re Ins. Brokerage Antitrust Litig., 618 F. 3d 300, 314 (3d Cir. 2010). The Court's inquiry is guided by the standards of Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009). Under Twombly and Iqbal, pleading requirements have shifted to a "more heightened form of pleading." See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible. Id. Accordingly, to determine the sufficiency of a complaint under Rule 12(b)(6) we must: (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement for relief." See Santiago v. Warminister Twp., 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

Slate Bar's allegations call upon the court to interpret and define the Policy language "by reason of the selling, serving, or furnishing of any alcoholic beverage" as well as the significance of the A&B endorsement.

Under Pennsylvania law, insurance policy interpretation is a matter of law for the court. See Pa. Nat'l Mut. Cas. Ins. Co. v. St. John, 106 A.3d 1, 14 (Pa. 2014). The "goal in construing and applying the language of an insurance contract is to effectuate the intent of the parties as manifested by the language of the specific policy." Id. (citing 401 Fourth St., Inc. v. Investors Ins. Grp., 879 A.2d 166, 171 (Pa. 2005)); see also Madison Constr. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999) ("The polestar of [the court's] inquiry . . . is the language of the insurance policy."). "When the language of an insurance policy is plain and unambiguous, [the] court is bound by that language." St. John, 106 A.3d at 14. "Alternatively, if an insurance policy contains an ambiguous term, 'the policy is to be construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy, and controls coverage.' " Id. (quoting 401 Fourth St., 879 A.2d at 171). "Contract language is ambiguous if it is reasonably susceptible to more than one construction and meaning." Id. (citing Lititz Mut. Ins. Co. v. Steely, 785 A.2d 975, 978 (Pa. 2001)). "Finally, the language of the policy must be construed in its plain and

ordinary sense, and the policy must be read in its entirety." Id. (citing Riccio v. Am. Republic Ins. Co., 705 A.2d 422, 426 (Pa. 1997)); Madison Constr. Co., 735 A.2d at 108 (observing the court "may inform [its] understanding of [insurance policy] terms by considering their dictionary definitions").

To determine whether the insurance policy applies to the factual allegations in the complaint, courts employ a two step analysis. "At step one, the insured bears the initial burden of showing that claims fall squarely within the policy's coverage." Liberty Surplus Ins. Corp. v. McFaddens at Ballpark LLC, 116 F. Supp. 3d 447, 455 (E.D. Pa. 2015). At step two, the insurer bears the burden of demonstrating the applicability of a policy exclusion to the third party complainant's claims. Id. If the insurer satisfies this burden, then the insurer has no duty to defend the claim. Id.

III. Discussion

    a. The Duty to Defend and the Duty to Indemnify

The declaratory judgment complaint asks that we enter an order declaring that Founders has both a duty to defend and indemnify Slate

Bar in the underlying action. Founders seeks discharge of both its duty to defend and its duty to indemnify. The Policy at issue provides both defense and indemnity for covered claims. The duty to defend is a distinct obligation separate and apart from the duty to indemnify. Erie Ins. Exchange v. Transamerica Ins. Co., 533 A.2d 1363, 1368 (Pa. 1987). The duty to defend arises whenever claims asserted by the injured party potentially come within the coverage of the policy. Gedeon v. State Farm Mut. Auto. Ins. Co., 188 A.2d 320, 321 (Pa. 1963). The duty to indemnify arises only when the insured is determined to be liable for damages within the coverage of the policy. Britamco Underwriters, Inc. v. Stokes, 881 F.Supp. 196, 198 (E.D. Pa. 1995). It follows then, that when the claims in the underlying action have not been adjudicated, the court entertaining the declaratory judgment action must focus on whether the underlying claims could potentially come within the coverage of the policy. Air Prod. & Chems., Inc. v. Hartford Accident & Indem. Co., 25 F.3d 177, 179 (3d Cir. 1994). If there is a possibility that any of the underlying claims could be covered by the policy at issue, the insurer is obliged to provide a defense at least until such time that those facts are determined, and the

claim is narrowed to one patently outside of coverage. Stokes, 881 F.Supp. at 198. If there is no possibility that any of the underlying claims could be covered by the policy at issue, judgment in the insurer's favor with regard to the duty to defend and indemnification is appropriate. Id.; Germantown Ins. Co. v. Martin, 595 A.2d 1172 (Pa. Super. Ct. 1991). Thus, we must determine whether the allegations in the complaint of the underlying action could potentially fall within the coverage of the policy. "The proper focus regarding issues of coverage under insurance contracts is the reasonable expectation of the insured." Britamco Underwriters, Inc. v. Weiner, 636 A.2d 649, 651 (Pa. Super. Ct. 1994). That expectation is governed by the unambiguous language of the insurance policy. Id.; see also Essex Ins. Co. v. Starlight Mgmt. Co., 198 Fed. App'x 179, 183 (3d Cir. 2006).

    b.   The Policy's Terms

The Policy at issue between Slate Bar and Founders states that Founders:

> [w]ill pay those sums that an "insured" becomes legally obligated to pay as damages because of "injury" to which this insurance applies if liability for such "injury" is imposed on an "insured" by

> reason of the selling, serving, or furnishing of any alcoholic beverage; and
>
> [w]ill defend an "insured" against any "suit" seeking those damages.

(Doc. 1-3, at 17). In addition, the policy further states that "[t]his insurance applies to "injury" only if the "injury" occurs as a direct result of an "insured" selling, serving, or furnishing alcoholic beverages on the "insured premises" during the policy period." (Id.). Also, the Policy contains an "Assault and/or Battery" exclusion to coverage which is set out as follows:

> This insurance does not apply to:
>
> k.  Assault and/or Battery
>     "Injury" arising from:
>
>     (1) assault and/or battery committed by any "insured," any "employee" of an "insured," or any other person;
>     (2) The failure to suppress or prevent assault and/or battery by any person in subparagraph k. (1) above;
>     (3) The selling, serving or furnishing of alcoholic beverages which results in an assault and/or battery; or
>     (4) The negligent:
>
>         (a) Employment;
>         (b) Investigation;

>
> (c) Supervision;
> (d) Reporting to the proper authorities, or failure to so report; or
> (e) Retention
>
> of or by a person for whom any "insured" is or ever was legally responsible and whose conduct would be excluded by subparagraphs k.(1) through k.(3) above.

(Id. at 18-19).

However, Slate Bar paid for an endorsement to the Policy entitled "ASSAULT AND/OR BATTERY COVERAGE BUY BACK" which is set out as follows:

> ASSAULT AND/OR BATTERY COVERAGE BUY-BACK
>
> This endorsement modifies insurance provided under the following:
>
> PENNSYLVANIA LIQUOR LIABILITY COVERAGE PART
>
> In consideration of the additional premium charged for this endorsement subparagraph k. Assault and/or Battery of SECTION I - LIQUOR LIABILITY COVERAGE, paragraph 2. Exclusions to Coverage, shall not apply and coverage for any "injury" that otherwise would be excluded by the Assault and/or Battery exclusion referenced herein shall be provided subject to the Limits of Insurance shown in the Declarations for this endorsement. The Combined Single Limit and Aggregate Limit applicable to the coverage provided by this endorsement shall be the same and shall be shown as a single limit in the Declarations on the line on which this

>endorsement is listed. Any coverage provided under the Limits of Insurance shown in the Declarations for this endorsement shall be subject to the Aggregate Limit applicable to the policy.

(Id. at 16). We find that this endorsement to the Policy is permitted under paragraph 10 thereof wherein it states that the "[p]olicy's terms can be amended or waived only by endorsement issued by us (Founders) and made part of this policy." (Id. at 21). Founders does not dispute that the A&B endorsement was an authorized change to the Policy. (Doc. 7, at 1-2). Further, it is undisputed that Fine sustained "bodily injury" as that term is defined under the Policy. (Doc. 1-3, at 22). Likewise, it is undisputed that the "injury" to Fine occurred on the "insured premises" as defined in the Policy. (Id.). Thus, we must determine whether the A&B endorsement provides coverage for the incident described in the complaint of the underlying action.

Without the A&B endorsement, the assault and battery exclusion referenced above would preclude coverage. The A&B endorsement eliminates this exclusion in its entirety. Nevertheless, Founders asserts that the A&B endorsement does not change the insuring agreement's language that the insurance applies to injury imposed on an insured by

12

reason of the insured selling, serving, or furnishing alcoholic beverages on the insured premises. (Doc. 7 at 2-3). The assault and battery exclusion specifically excluded coverage for an "injury" arising from the selling, serving, or furnishing of alcoholic beverages which results in assault and/or battery. The A&B endorsement eliminated that portion of the exclusion as well as the remainder.

Based upon the facts alleged in the complaint of the underlying action, they create the possibility that the underlying claim could be covered by the policy at issue. For example, the complaint alleges that Slate Bar is the owner of liquor license No. R-3571 for the insured premises. (Doc. 1-3, at 25). Cortez is alleged to be an agent or employee of Slate Bar. (Id. at 26). Fine and his friends went to Slate Bar for the purpose of purchasing a take-out twelve-pack of beer. (Id.). In fact, the complaint avers that the Slate Bar bouncers were informed of the patrons' purpose "to purchase beer and leave." (Id.). It was further averred that the "untrained" and "unsupervised" bouncers negligently escalated the matter into an "altercation." (Id.). Also, Fine alleged that Slate Bar's representatives failed to make any meaningful attempt to intervene, protect, or assist him

while the bouncers negligently and improperly confronted him. (Id. at 27). Fine alleged various acts of negligent conduct on the part of Slate Bar including the failure: (1) to properly train its employees; (2) to monitor the activities and practices of its security personnel; (3) to properly intervene, protect, or assist Fine; (4) to keep the business premises under control and safe; (5) to adequately recruit, train, maintain employ and/or supervise its employees; and (6) to warn patrons and business visitors that Slate Bar's employees were armed with knives. (Id. at 28-29).

In its reply brief (Doc. 7 at 4), Founders directs us to Whiskey Tango, Inc. v. United States Liab. Ins. Grp., No. 3026, 2007 Phila. Ct. Com. Pl. LEXIS 157 (May 15, 2007), where a patron of the bar was physically attacked by its employees. There was no allegation that the patron's injuries resulted from the bar's selling, serving, or furnishing alcohol to anyone. On that basis, the court granted summary judgment. The facts of Whiskey Tango are distinguishable from the facts of the instant case. Here, Fine alleged in his complaint that the Slate Bar bouncers were informed of the group's intention to purchase a take-out twelve-pack of beer. (Doc. 1-3, at 25). The fact that the group allegedly expressed the intention to purchase

alcoholic beverages in the form of beer triggers coverage.

For purpose of resolving the instant motion, we do not find it dispositive that neither Fine nor any member of his group actually purchased alcoholic beverages. They expressed their intended purpose to the bouncers that they wanted to purchase a twelve-pack of beer before the altercation ensued. Accepting these allegations as true and viewing them in the light most favorable to the plaintiff, as we must, we find that, for purposes of determining the duty to defend, the complaint in the underlying action plausibly asserts a claim of negligence arising out of Slate Bar's selling, serving, or furnishing alcoholic beverages on the insured premises all of which potentially falls within the coverage of the Policy. However, as the claim in the underlying action has not been adjudicated, the duty to indemnify has not yet arisen. Founders is therefore obliged to provide a defense at least until such time that the claim is narrowed to one patently outside of coverage. Therefore, the parties may address these issues in a subsequent dispositive motion.

An appropriate Order follows.

*Joseph F. Saporito, Jr.*
JOSEPH F. SAPORITO, JR.
U.S. Magistrate Judge

Dated: July 8, 2016