# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

SLATE BAR & LOUNGE, INC.,
d/b/a SLATE BAR & LOUNGE,

     Plaintiff,

     v.

FOUNDERS INSURANCE
COMPANY,

     Defendant.

CIVIL ACTION NO. 3:15-cv-02251

(SAPORITO, M.J.)

## <u>MEMORANDUM</u>

This insurance declaratory judgment action was removed from the Court of Common Pleas for Luzerne County, Pennsylvania. The plaintiff, Slate Bar & Lounge, Inc. d/b/a Slate Bar & Lounge ("Slate Bar"), filed its original complaint in state court on November 4, 2015. (Doc. 1-3). The action was timely removed to this Court by the defendant, Founders Insurance Company ("Founders"), on November 24, 2015, pursuant to 28 U.S.C. §§ 1441(a) and 1446. (Doc. 1).

In this action, Slate Bar seeks a declaration by the Court that Founders has a duty to defend and indemnify it with respect to a particular state tort action under a commercial liquor liability policy issued to it by Founders. In the underlying state court action, the tort

plaintiff seeks an award of damages for injuries he suffered at the hands of a bouncer employed by Slate Bar during an altercation that occurred when the tort plaintiff attempted to enter the bar to purchase a twelve-pack of beer to go. The tort plaintiff was allegedly stabbed with a 3-inch knife.

This matter is now before the Court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Doc. 30; Doc. 31). For the reasons set forth below, the defendant's motion (Doc. 31) will be denied, the plaintiff's motion (Doc. 30) will be granted with respect to Founders' duty to defend it and denied with respect to Founders' duty to indemnify it, and judgment will be entered in favor of the plaintiff with respect to Founders' duty to defend Slate Bar in the underlying tort action. The plaintiff's claim for declaratory relief on Founders' duty to indemnify Slate Bar will be dismissed without prejudice as premature and unripe.

## I.   BACKGROUND

The plaintiff is a Pennsylvania corporation with its principal place of business at 2324 Sans Souci Parkway, Hanover Township, Pennsylvania, where it at one time operated a drinking establishment, also called Slate Bar & Lounge. The defendant is an insurance company organized under

the laws of the State of Illinois, with its principal place of business located in Des Plaines, Illinois. Because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, the Court has proper jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

The complaint in this action was originally filed by the plaintiff in the Court of Common Pleas for Luzerne County, Pennsylvania, on November 4, 2015. (Doc. 1-3, at 4–11). It was timely removed to this Court by the defendant on November 24, 2015. (Doc. 1).

Founders filed a motion to dismiss for failure to state a claim on November 25, 2015. (Doc. 3). That motion was denied on July 8, 2016. (Doc. 18; Doc. 19). Founders filed a motion for reconsideration on July 22, 2016. (Doc. 20). On July 26, 2016, Founders filed its answer to the complaint. (Doc. 21). On January 9, 2017, we denied the motion for reconsideration. (Doc. 23: Doc. 24).

On March 25, 2017, the plaintiff filed its motion for judgment on the pleadings, requesting that judgment be entered for the same reasons stated in our opinion denying the defendant's original motion to dismiss. (Doc. 30). On March 27, 2017, the defendant filed its cross-motion for

judgment on the pleadings, largely relying on the same arguments it had presented in support of its earlier motion to dismiss. (Doc. 31). On April 10, 2017, the plaintiff filed a brief in opposition to the defendant's motion. (Doc. 33). These motions are now ripe for disposition.

## A. The Underlying Tort Complaint

The underlying state tort complaint was filed in the Court of Common Pleas for Luzerne County, Pennsylvania, on February 19, 2013. (Doc. 1-3, at 25–32).[1] The tort complaint alleged injuries suffered by the tort plaintiff, Bruce H. Fine, when he was stabbed by Edwin Cortez, a "bouncer/security guard" employed by Slate Bar. In his complaint, Fine alleged the following facts:

> 6. On the evening [of] Saturday, December 8, 2012, Plaintiff Bruce Fine, along with friends Jennifer Ruchinski, Jason Girton, and Chastity Girton, traveled to Defendant, Slate Bar and Lounge, to purchase a twelve (12) pack of beer. Plaintiff and his friends were not planning on staying at Defendant, Slate Bar and Lounge, after purchasing the beer to go.
>
> 7. Upon arriving at the door of Defendant, Slate Bar and Lounge, Plaintiff, Bruce Fine, and his friends were stopped by Edwin Cortez and two other employees (hereinafter "Slate Bar Bouncers") working at the door,

---

[1] *Bruce H. Fine v. Slate Bar and Lounge, Inc. t/a Slate Bar and Lounge*, No. 2076 of 2013 (Luzerne Cty. C.C.P.).

and were informed that there was a $5.00 cover charge, total[ing] $20.00 for the entire group, for admission [to] the Defendant bar.

8. The group informed the Slate Bar Bouncers that they wanted only to purchase beer and leave, the Slate Bar Bouncers informed the patrons that only the females were allowed to enter the bar, requiring the males to remain outside.

9. Mr. Fine and Mr. Girton objected. An exchange of words ensued. The untrained and unsupervised Slate Bar Bouncers negligently escalated the matter into an altercation.

10. During the scuffle, Edwin Cortez, acting as a Slate Bar Bouncer, suddenly and without warning, produced a knife and stabbed Plaintiff, Bruce Fine[,] in the abdomen.

11. Jason Girton, recovered Edwin Cortez's knife[,] which had a blade of approximately 3 inches. The knife was turned [] over to police and remains in custody of the Hanover Township Police.

12. According to a criminal complaint filed against Edwin Cortez, police responded to the Slate Bar and noted bruises and abrasions on Plaintiff[] Bruce Fine's face, along with stab wounds. . . .

13. According to the criminal complaint, Edwin Cortez and Justin Catalano, employees of this licensed bar, fled out the back door of the Defendant, Slate Bar and Lounge, when police responded to the scene to investigate what had happened.

14. Using a police dog, police officers tracked Edwin Cortez.

15. Neither Mr. Mannino nor any other representative

of Defendant, Slate Bar and Lounge, made any meaningful attempt to intervene, protect, or assist Plaintiff, Bruce Fine[,] while the Slate Bar Bouncers negligently and improperly confronted Mr. Fine.

16. As a direct and proximate result of Defendant's negligence, Plaintiff, Bruce Fine[,] has been, and may continue to be, subjected to further medical procedures and treatments, and all accompanying risks, hazards, pain, suffering, discomfort, and economic losses associated therewith, all to his continuing detriment and loss, and may be compelled to expend money for medicine and medical attention in an attempt to cure or relieve the pain caused by the aforementioned injuries.

(*Id.* at 26–28 (footnote omitted)).

The single-count tort complaint alleged that Slate Bar was negligent by reason of the following conduct:

a. Failing to properly train its employees, agents, and/or ostensible agents to identify and avoid conduct that could lead to harm to patrons;

b. Failure to properly train its employees, agents, and/or ostensible agents to intervene in situations where the probability of harm to patrons is self-evident;

c. Failure to train its employees, agents, and/or ostensible agents on security techniques;

d. Failure to properly employ experienced security persons;

e. Failure to properly train security persons;

f. Failure to properly clothe a security person in such a way as to make his or her status as a security person

readily apparent;

g. Failure to properly monitor the activities and practices of its security personnel;

h. Failure to properly intervene, protect, or assist Plaintiff, Bruce Fine, in any way once he was negligently and improperly confronted by Edwin Cortez;

i. Failure to keep the business premises under control and safe for its business invitees;

j. Failure to adequately recruit, train, maintain, employ and/or supervise its employees, agents, and/or ostensible agents;

k. Negligently allowing its employees, agents, and/or ostensible agents to carry knives;

l. Corporate negligence;

m. Negligence *per* se;

n. Creating hazardous and unsafe conditions in and outside of Slate Bar;

o. Failing to warn patrons and business visitors that Slate Bar's agents, employees, and/or ostensible agents were armed with weapons such as knives with three (3) inch blades; and

p. Violations of duties imposed under Pennsylvania law and the *Restatement of Torts*, including, but not limited to, Section 3233.[2]

---

[2] This citation appears to be a scrivener's error, as there is no "Section 3233" in the *Restatement of Torts*. The tort plaintiff likely intended to cite the *Restatement (Second) of Torts* § 344, which concerns

*(continued on next page)*

(*Id.* at 28–29). The tort complaint specifically noted that:

> Pennsylvania Court[s] have long imposed duties upon bar owners to keep the bar "orderly and well policed." *Ash v. 627 Bar, Inc.*, 176 A.2d 137, 139 (Pa. Super. [Ct.] 1961) (affirming judgment against unruly bar when patron attacked by unknown person). The owner is "bound to see not only that there is order, *but that [patrons are] properly protected from assaults and insults by those in its employ* and by others who may be in its place of business." *Id.* (emphasis added).

(*Id.* at 31 (emphasis in original)).

As a remedy for his injuries, the tort plaintiff requested an award of $50,000 or more in damages. (*Id.* at 32).

## B. The Insurance Policy

Slate Bar is the named insured on a commercial liquor liability policy, Policy No. LLPA000967, issued by Founders and effective for a policy period beginning August 15, 2012, and ending August 15, 2013. (Doc. 1-3, at 13–23). The policy consists of a two-page declarations page, a seven-page liquor liability coverage form (Form PA-CSL), and two policy endorsements amending provisions set forth in Form PA-CSL—an endorsement excluding acts of terrorism (Form CG 21 73 01 08), and an

---

liability for the acts of third persons with respect to business premises open to the public. This provision would not trigger coverage under the Founders policy in any event, so the error is of no consequence here.

assault-and-battery coverage buy-back endorsement (Form PA-LL01).

(*Id.*). The policy's insuring agreement provides as follows:

> 1. *Insuring Agreement*
>
> - We will pay those sums that an "insured" becomes legally obligated to pay as damages because of "injury" to which this insurance applies if liability for such "injury" is imposed on an "insured" by reason of the selling, serving, or furnishing of any alcoholic beverage; and
>
> - We will defend an "insured" against any "suit" seeking those damages.
>
> . . . .
>
> We have no duty to defend an "insured" against any "suit" seeking damages for "injury" to which this insurance does not apply. . . .
>
> Subject to *Exclusions to Coverage* (Paragraph 2 below), this insurance applies to "injury" only if the "injury" occurs as a direct result of an "insured" selling, serving, or furnishing alcoholic beverages on the "insured premises" during the policy period.

(*Id.* at 17).

In addition to Slate Bar itself, as a corporation, the policy defines "insured" to include its employees with respect to "acts within the course and scope of their employment by [Slate Bar] or while performing duties related to the conduct of [Slate Bar's] business." (*Id.* at 19).

The policy defines "injury" as "all damages, including damages

because of 'bodily injury,' 'property damage,' and 'loss of support.'" (*Id.* at 22). "Bodily injury" is in turn defined as "bodily injury, sickness, or disease sustained by a person, including death and loss of society, companionship, and consortium to others resulting from any of these at any time." (*Id.*).

The policy defines "suit" as "a civil proceeding in which damages because of 'injury' to which this insurance applies are alleged," including arbitration or other alternative dispute resolution proceedings. (*Id.* at 23).

The policy defined the "insured premises" as "the premises shown in the Declarations." (*Id.* at 22). The Declarations Page in turn identified the insured premises by its address: 2324 San Souci Parkway, Hanover Township, Pennsylvania, 18706. (*Id.* at 14).

The policy also contains several coverage exclusions, including an "assault and battery" exclusion (Paragraph 2.k), which provides that the policy does not apply to injury arising from assault or battery, from the failure to suppress or prevent assault or battery, from the selling, serving or furnishing of alcoholic beverages resulting in assault or battery, or from various forms of negligent conduct resulting in assault or battery. (*Id.* at 18–19). The assault-and-battery coverage buy-back endorsement (Form PA-LL01), however, modifies the policy language to effectively eliminate

the "assault and battery" exclusion in its entirety.[3]

## II.   LEGAL STANDARD

The defendant has answered the complaint and both parties have moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for

---

[3] The endorsement provides that, in consideration for an additional premium, the policy's "assault and battery" exclusion (Paragraph 2.k):

> shall not apply and coverage for any "injury" that otherwise would be excluded by the Assault and/or Battery exclusion referenced herein shall be provided subject to the Limits of Insurance shown in the Declarations on the line on which this endorsement is listed. Any coverage provided under the Limits of Insurance shown in the Declarations for this endorsement shall be subject to the Aggregate Limit applicable to the policy.

(Doc. 1-3, at 16). Under this endorsement language, the only distinction in the coverage afforded to injuries arising from assault or battery and injuries that do not arise from assault or battery concerns the applicable coverage limits. Generally, the policy provides third-person liability coverage for up to $1 million per occurrence, subject to a $2 million aggregate limit (i.e., a maximum of $2 million in indemnity payouts for the entire policy period). (*Id.* at 14, 20). Claims involving assault and battery, however, are subject to separate sublimits of $1 million per occurrence and $1 million in the aggregate. (*Id.*). Because the coverage question presented here concerns a single occurrence, and because there is no suggestion by either party of any other claim that might have eroded available aggregate coverage limits, this distinction between the applicable coverage limits for assault-and-battery claims and all other claims is immaterial.

judgment on the pleadings." Fed. R. Civ. P. 12(c). "Under Rule 12(c), a court must accept all factual averments as true and draw all reasonable inferences in favor of the non-moving party." *U.S. Fid. & Guar. Co. v. Tierney Assoc., Inc.*, 213 F. Supp. 2d 468, 469 (M.D. Pa. 2002) (citing *Soc'y Hill Civic Ass'n v. Harris*, 632 F.2d 1045, 1054 (3d Cir. 1980)); *see also Westport Ins. Corp. v. Black, Davis & Shue Agency, Inc.*, 513 F. Supp. 2d 157, 163 (M.D. Pa. 2007) ("When deciding a motion for judgment on the pleadings, the court is directed to view 'the facts presented in the pleadings and the inferences drawn therefrom in the light most favorable to the nonmoving party.'") (quoting *Hayes v. Cmty. Gen. Osteopathic Hosp.*, 940 F.2d 54, 56 (3d Cir. 1991)). In deciding a Rule 12(c) motion, we may also consider "matters of public record, and authentic documents upon which the complaint is based if attached to the complaint or as an exhibit to the motion." *Chemi SpA v. GlaxoSmithKline*, 356 F. Supp. 2d 495, 496–97 (E.D. Pa. 2005); *see also Kilvitis v. Cty. of Luzerne*, 52 F. Supp. 2d 403, 406 (M.D. Pa. 1999) ("In deciding a Rule 12(c) motion, however, a court may take judicial notice of any matter of public record."). Ultimately, "[a] party moving for judgment on the pleadings under Rule 12(c) must demonstrate that there are no disputed material facts and that judgment

should be entered as a matter of law." *U.S. Fid. & Guar.*, 213 F. Supp. 2d

at 469–70 (citing *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289,

290–91 (3d Cir. 1988), and *Inst. for Sci. Info., Inc. v. Gordon & Breach, Sci.

Publishers, Inc.*, 931 F.2d 1002, 1005 (3d Cir. 1991)). Here, the parties are

in agreement that the pleadings and attached exhibits disclose all of the

facts pertinent to resolution of the coverage question at issue.

## III.  DISCUSSION

Slate Bar seeks a declaration by the Court that Founders has a duty

to defend and indemnify it in the state tort action brought by Bruce Fine.

The Third Circuit has summarized the substantive law applicable in this

scenario:

> An insurer's duty to defend "is a distinct obligation" that is "different from and broader than the duty to indemnify." Because an insurer's duty to defend its insured in a lawsuit is broader than its duty to indemnify, it necessarily follows that it will not have a duty to indemnify an insured for a judgment in an action for which it was not required to provide a defense. Under Pennsylvania law, . . . a court ascertaining whether an insurer has a duty to defend its insured makes its determination by defining the scope of coverage under the insurance policy on which the insured relies and comparing the scope of coverage to the allegations of the underlying complaint. If the allegations of the underlying complaint *potentially* could support recovery under the policy, there will be coverage at least to the extent that the insurer has a duty to defend its insured in the case.

As the Pennsylvania Supreme Court has explained, "[i]f the complaint filed against the insured avers facts which would support a recovery that is covered by the policy, it is the duty of the insurer to defend until such time as the claim is confined to a recovery that the policy does not cover." Importantly, Pennsylvania adheres to the "four corners" rule (also known as the "eight corners" rule),[4] under which an insurer's potential duty to defend is "determined *solely* by the allegations of the complaint in the [underlying] action." Under the four corners rule, a court in determining if there is coverage does not look outside the allegations of the underlying complaint or consider extrinsic evidence.

To determine whether based on its factual allegations an underlying complaint triggers an insurer's duty to defend, a court views the allegations as true and "liberally construe[s them] in favor of the insured." An insurer must defend its insured until it becomes absolutely clear that there is no longer a possibility that the insurer owes its insured a defense. Thus, an insurer has a duty to defend if there is any possibility that its coverage has been triggered by allegations in the underlying complaint.

*Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 673–74 (3d Cir. 2016)

(citations and footnotes omitted, emphasis and brackets in original).

## A. Duty to Defend

Under the policy's insuring agreement, Founders agreed to

---

[4] "There will be eight corners because a court in deciding if there is coverage will look at both the insurance policy and the underlying complaint." *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 673 n.9 (3d Cir. 2016).

indemnify Slate Bar for legal damages where (1) liability for an injury is imposed on Slate Bar or its employees "by reason of the selling, serving, or furnishing of any alcoholic beverage," and (2) where "the 'injury' occurs as a direct result of [Slate Bar or its employees] selling, serving, or furnishing alcoholic beverages" on its premises located at 2324 Sans Souci Parkway, Hanover Township, Pennsylvania. So long as there is any possibility that the policy's coverage has been triggered by the allegations of the underlying complaint, Founders has a duty to defend Slate Bar in the underlying tort action.

At bottom, the question presented in this case is whether the underlying tort complaint sufficiently alleges that Fine's injuries were "a direct result of" Slate Bar's "selling, serving, or furnishing alcoholic beverages" and that liability should be imposed on Slate Bar "by reason of the selling, serving, or furnishing of any alcoholic beverage." (*See* Doc. 1-3, at 17). Courts have construed the language used in this policy—"direct result of" and "by reason of"—to mean "proximately caused by." *See Jefferson Bank v. Progressive Cas. Ins. Co.*, 965 F.2d 1274, 1281–82 (3d Cir. 1992) (noting that "courts have equated 'direct result' with 'proximate cause of loss,'" and holding that "'resulting directly from' means

'proximately caused by'") (applying Pennsylvania law); *Trexler Lumber Co. v. Allemannia Fire Ins. Co. of Pittsburgh*, 136 A. 856, 858 (Pa. 1927) (equating "direct cause" with "proximate cause"); *Marks v. Lumbermen's Ins. Co. of Philadelphia*, 49 A.2d 855, 856 (Pa. Super. Ct. 1946) (equating "direct loss" with "proximately caused by"); *see also Caterpillar, Inc. v. Int'l Union*, 107 F.3d 1052, 1068–69 (3d Cir. 1997) (Mansmann, J., dissenting) (noting that "[d]ictionaries define the phrase "by reason of" to mean "because of" or "on account of," and concluding that "the phrase 'by reason of x' refers at a minimum to a major reason for x, not simply a relatively minor 'but-for' cause"); *McNeilab, Inc. v. N. River Ins. Co.*, 645 F. Supp. 525, 535 (D.N.J. 1986) ("The causal connection implied by the phrase 'by reason of' is normally that of proximate causation."); *By reason of*, Black's Law Dictionary 201 (6th ed. 1990) (defining "by reason of" as "[b]ecause of," or "[b]y means, acts, or instrumentality of").

"Proximate causation is defined as a cause which was 'a substantial factor in bringing about the plaintiff's harm.' The concept is essentially a limiting principle that functions as 'shorthand for the policy-based judgment that not all factual causes contributing to an injury should be legally cognizable causes.'" *Ramara, Inc.*, 814 F.3d at 675 (citations

omitted); *see also Jefferson Bank*, 965 F.2d at 1281 ("Pennsylvania, consistent with general notions of proximate causation, requires that plaintiffs in negligence cases show substantiality, rather than immediacy, in order to demonstrate probable cause."); *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 366–67 (3d Cir. 1990) ("Cause in fact or 'but for' causation requires proof that the harmful result would not have come about but for the conduct of the defendant. Proximate cause, in addition, requires proof that the defendant's conduct was a substantial contributing factor in bringing about the harm alleged."). Thus, we must determine whether Slate Bar's selling, serving, or furnishing of alcoholic beverages was a substantial contributing factor in bringing about Fine's injury. We find that it was.

It is undisputed that the underlying complaint alleges that Fine and his friends went to Slate Bar for the express purpose of purchasing a twelve-pack of beer to go. It is undisputed that the underlying complaint alleges that Cortez was employed by Slate Bar as a bouncer, in which capacity he was positioned to interact with Fine and other patrons as they attempted to enter the bar to purchase alcoholic beverages. It is undisputed that the underlying complaint alleges that Fine and his friends

told Cortez and the other bouncers that they came to and sought entry into the bar for the purpose of purchasing alcoholic beverages. Based on these allegations, we find that Slate Bar's selling, serving, or furnishing alcoholic beverages was a substantial contributing factor in bringing about Fine's injury, and thus Fine's injury was proximately caused by the selling, serving, or furnishing of alcoholic beverages by Slate Bar. *See Liberty Surplus Ins. Corp. v. McFaddens at Ballpark LLC*, 116 F. Supp. 3d 447, 457 (E.D. Pa. 2015) (finding liquor liability coverage triggered under similar circumstances).

Moreover, we note that the underlying tort complaint expressly alleges a claim of negligence *per se* (Doc. 1-3, at 29), which under the facts alleged may only be reasonably construed as a claim that the injury to Fine was caused by selling, serving, or furnishing of alcoholic beverages to a visibly intoxicated person,[5] in violation of Slate Bar's statutory duties under the Dram Shop Act, 47 Pa. Cons. Stat. § 4-493. *See Springfield Twp. v. Indemnity Ins. Co. of N. Am.*, 64 A.2d 761, 762 (Pa. 1949) ("It is not the actual details of the injury, but the nature of the claim which determines whether the insurer is required to defend."). *See generally Miller v. Brass*

---

[5] Presumably Cortez, as Fine had not yet entered the bar.

*Rail Tavern, Inc.*, 702 A.2d 1072, 1078 (Pa. 1997) ("A violation of the Dram Shop Act is negligence per se.") (footnote omitted).

Accordingly, we find that the allegations of the underlying complaint *potentially* could support recovery under the commercial liquor liability policy issued to Slate Bar by Founders. Therefore, Founders owes a duty to defend Slate Bar in the underlying tort action, *Bruce H. Fine v. Slate Bar and Lounge, Inc. t/a Slate Bar and Lounge*, No. 2076 of 2013 (Luzerne Cty. C.C.P.).

### B. Duty to Indemnify

Slate Bar also seeks a declaration that Founders has a duty to indemnify it in the event Slate Bar is found liable in the underlying state tort action. But the question of whether Founders has a duty to indemnify "is not ripe for adjudication until the insured is held liable, if at all, in the underlying suit." *Knightbrook Ins. Co. v. DNA Ambulance, Inc.*, Civil Action No. 13-2961, 2013 WL 6662745, at *8 (E.D. Pa. Dec. 16, 2013); *see also C.H. Heist Caribe Corp. v. Am. Home Assurance Co.*, 640 F.2d 479, 483 (3d Cir. 1981) (holding that a decision on an insurer's duty to indemnify was premature before entry of judgment against the insured in the underlying state court action); *Unionamerica Ins. Co., Ltd. v. Johnson*,

806 A.2d 431, 434 (Pa. Super. Ct. 2002) ("It was premature for the trial court to rule on the indemnity question. . . . The duty to indemnify is a conditional obligation. The duty to indemnify arises only if, after trial on the third-party claim, it is determined that the loss suffered is covered by the terms of the policy.").[6] The Court therefore will dismiss, without prejudice, Slate Bar's claim for declaratory judgment on indemnity. *See Metro. Prop. & Cas. Ins. Co. v. Spayd*, No. 5:16-cv-04693, 2017 WL 3141170, at *2 (E.D. Pa. July 24, 2017) (concluding that where a duty-to-indemnify claim is not ripe, the proper disposition is dismissal rather than a stay) (citing *Med. Assurance Co. v. Hellman*, 610 F.3d 371, 375 (7th Cir. 2010)).

## IV.  CONCLUSION

For the foregoing reasons, the defendant's motion for judgment on the pleadings (Doc. 31) will be denied, and the plaintiff's motion for judgment on the pleadings (Doc. 30) will be granted with respect to the plaintiff's claim for declaratory relief on Founders' duty to defend it and

---

[6] The Supreme Court of the United States has held that the question of ripeness may be considered by a court *sua sponte* even when it is based on prudential concerns alone. *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003); *see also Cty. Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 163 (3d Cir. 2006).

denied with respect to the plaintiff's claim for declaratory relief on Founders' duty to indemnify it. Moreover, the plaintiff's claim for declaratory relief on Founders' duty to indemnify it will be dismissed without prejudice as premature and unripe.

An appropriate Order will follow.

Dated: October 18, 2017                    *s/ Joseph F. Saporito, Jr.*
                                           JOSEPH F. SAPORITO, JR.
                                           United States Magistrate Judge